# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLA LANE, *et al.*, | ) |
| | ) |
| | )   Civil Action No.: 1:14-cv-01316 (RBW) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, the District of Columbia ("District"), Officer John Wright, and John Doe Police Officers 1-10, by and through undersigned counsel, hereby move the Court for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted. Defendants seek dismissal because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity (2) Plaintiffs failed to allege a *Monell* violation against the District; and (3) the officers were not negligent *per se*.

The grounds for this motion are more fully set forth in the accompanying memorandum of points and authorities. A proposed order is also attached.

## LCvR 7(m) Certificate

Because this motion is dispositive, LCvR 7(m) does not require Defendants to seek Plaintiffs' consent.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

*/s/ Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057

*/s/ Aaron J. Finkhousen*
AARON J FINKHOUSEN [1010044]
441 4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-6511 (direct)
aaron.finkhousen@dc.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

ELLA LANE, *et al.*,                          )
                                              )
                                              )   Civil Action No.: 1:14-cv-01316 (RBW)
              Plaintiffs,                     )
                                              )
v.                                            )
                                              )
DISTRICT OF COLUMBIA, *et al.*                )
                                              )
                                              )
              Defendants.                     )
_____)

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, the District of Columbia, Officer John Wright, and John Doe Police Officers 1-10, by and through undersigned counsel, hereby move the Court for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted.  Defendants seek dismissal because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity; and (2) Plaintiffs failed to allege a *Monell* violation against the District.

Plaintiffs allege eight claims for relief.  Compl. ¶¶ 85-100.  These eight claims can be conceptually organized as follows: (1) an alleged violation of the Fourth Amendment by the individual officers in acquiring and serving the search warrant (Counts 1, 2, 3, 5, 6, 7, and 8); and (2) an alleged *Monell* violation against the District of Columbia (Count 4).  The individual officers are shielded by qualified immunity because Plaintiffs allege

no constitutional violation and because the officers' actions did not violate any clearly

established right.   Plaintiffs have failed to allege a *Monell* claim against the District

because there is no underlying constitutional violation.

## Introduction

Plaintiffs allege that police officers humiliated and embarrassed them when the

officers arrested Plaintiff Terrance Crossland and two of his friends after finding a gun

in a jacket Crossland represented belonged to him.   The gun did not belong to Plaintiffs

and no incriminating evidence was found in their home.   Thus, they conclude no

warrant to search their home should have issued.   However,

> The Fourth Amendment allows warrants to issue on
> probable cause, a standard well short of absolute certainty.
> Valid warrants will issue to search the innocent, and people
> like [plaintiffs] unfortunately bear the cost. Officers
> executing search warrants on occasion enter a house when
> residents are engaged in private activity; and the resulting
> frustration, embarrassment, and humiliation may be real, as
> was true here. When officers execute a valid warrant and act
> in a reasonable manner to protect themselves from harm,
> however, the Fourth Amendment is not violated.

*Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 615-16 (2007).

## Nature of the Case

While on a regular patrol, Metropolitan Police Department ("MPD") Officer John

Wright observed what he believed was evidence of the use of marijuana and the

consumption of alcohol.   Compl. ¶ 17.   Officer Wright approached the individuals he

had observed and began questioning them.   Compl. ¶ 18.   The three individuals were

2

on Plaintiff Ella Lane's property.  Compl. n.2.  During the conversation, Officer Wright picked up a jacket that conspicuously contained a bottle of Hennessey.  Compl. ¶ 22. When Officer Wright picked up the jacket, he found a pistol.  Compl. ¶ 23, Ex. 1.  The officers then performed a safety sweep of the surrounding area and arrested the three individuals.  Compl. ¶¶ 24, 56.  The officers entered and briefly searched Ms. Lane's home.  Compl. ¶ 56.  Ms. Lane did not explicitly object to the officers entering the home after they explained to her the reason for arresting the three individuals.  Compl. ¶¶ 54, 55, 56.

Officer Wright then applied for a warrant based on the discovery of the gun and his experience and training.  Compl. Ex. 1.  The D.C. Superior Court issued a warrant, which the officers executed the same day.  Compl. Ex. 1.  Ms. Lane was forced to wait outside for four hours.  Compl. ¶ 67.  The officers found no contraband.  Compl. ¶ 71.

Ms. Lane alleges the officers deleted pictures she had taken of the officers. Compl. ¶ 73.

## Standard of Review

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged approach" that a court may utilize when ruling on a motion to dismiss

3

pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While a court generally must consider a plaintiff's factual allegations as true, the court may first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Thus, the basic pleading standards "demand [] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Applying these standards to the instant case, the Court should dismiss the Complaint.

<u>**Argument**</u>

**I.    The individual officers are entitled to qualified immunity.**

In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court set forth a two-step process for determining whether qualified immunity should apply in a particular case. The first inquiry under *Saucier* is whether the facts, taken in the light most favorable to the party claiming to have been injured, show that the government official's conduct violated a constitutional right.  *Katz*, 533 U.S. at 201.  If no constitutional right was violated, qualified immunity is appropriate.  *Id.*  If the plaintiff's rights were violated, the second inquiry is whether, "in light of the specific context of the case," the right in

4

question was "clearly established." *Id.* A right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Claims of qualified immunity should be resolved "at the earliest possible stage in litigation." *Katz*, 533 U.S. at 200-01 (quotation marks and citation omitted).

When police officers obtain a warrant before executing a search, they are ordinarily entitled to rely on the issuing judge's determination that probable cause exists. *See United States v. Spencer*, 530 F.3d 1003, 1006-07 (D.C. Cir. 2008). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of [qualified] immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted).

The officers are entitled to qualified immunity because their actions were reasonable and because any rights Plaintiffs seek to vindicate were not clearly established.

### a. The warrant was supported by probable cause.[1]

In determining whether an affidavit supports probable cause to support a search warrant, a judge must take a common-sense approach and determine whether there is a

---

[1]  Because whether a warrant is supported by probable cause is a question of law, Plaintiffs' allegations that the warrant was not supported by probable cause need not be presumed true in a motion to dismiss. *See Iqbal*, 556 U.S. at 679.

fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts have routinely rejected hypertechnical, post hoc reviews of probable cause. *See, e.g., id.* at 236. The Constitution requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Florida v. Harris*, 133 S.Ct. 1050, 1055 (2013) (internal quotations omitted) (alteration in original). To determine whether an affidavit could support probable cause where a plaintiff alleges omission of material information, "logic dictates that the affidavit be read as if the allegedly relevant material were included to determine whether probable cause would have been undetermined." *Ogden v. Dist. of Columbia*, 676 F. Supp. 324, 327 (D.D.C. 1987) *aff'd in an unpublished opinion*, 861 F.2d 303 (D.C. Cir. 1988).

Here, the affidavit supporting the warrant provides that:

1) The officer was assigned to the 5th District VICE Unit and had experience in gun arrests and search warrants where guns, narcotics, and money had been found;
2) The officer described the arrest that led him to conclude probable cause existed to search 2400 3rd Street NE:
   a) The officer was operating an unmarked police vehicle when he observed three individuals sitting on the steps in front of 2400 3rd Street NE;
   b) The officer identified the three individuals as Darrell Boatwright, Benjamin Crutchfield, and Terrance Crossland, Jr.;
   c) From the car and while driving down Bryant Street, the officer observed what appeared to be a marijuana cigar and proceeded to drive closer to the three individuals;
   d) The officer then noticed a Styrofoam cup, which he knew to be regularly used by individuals drinking alcohol;
   e) The officer inquired whether anyone lived at the address and Plaintiff Crossland stated that he did;

6

f) The officer asked Mr. Crutchfield, who was smoking what appeared to be a marijuana cigar, to put out the cigar and Mr. Crutchfield declared it to be synthetic marijuana;

g) The officer then asked for and received identification cards from Mr. Boatwright and Mr. Crutchfield;

h) The officer learned that the Styrofoam cup had liquor in it;

i) The officers then noticed a red jacket, which conspicuously contained a bottle of alcohol, lying on the steps where the three individuals had been seated and behind where Mr. Crossland was seated;

j) The officer searched the jacket to ascertain ownership because Mr. Crossland claimed the jacket, but was already wearing a jacket;

k) The officer found a pistol in the jacket;

l) The officer called for assistance and, when additional officers arrived, placed all three individuals under arrest.

3) An investigation into the pistol revealed that the pistol was stolen and loaded with six rounds, one of which was found in the chamber;

4) Later, Mr. Boatwright claimed ownership of the jacket, the gun, and the alcohol; and

5) The officer sought a warrant based on his knowledge and experience of the likelihood of discovering gun paraphernalia in the home of a gun owner;

Compl. at Ex. 1.  Plaintiffs allege that the affidavit cannot support probable cause because the search of the jacket was unreasonable, the affidavit omits certain relevant facts, and Mr. Boatwright did not reside at 2400 3rd Street.

Plaintiffs allege that the initial search of Mr. Boatwright's jacket was unreasonable and, therefore, unconstitutional.  Compl. ¶¶ 54.  This statement is irrelevant to Plaintiffs' claim.  Use of unlawfully obtained evidence "works no new Fourth Amendment wrong."  *United States v. Leon*, 468 U.S. 897, 905-906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974).  In fact, evidence obtained in derogation of the Fourth Amendment is regularly admitted against co-conspirators or co-defendants who have no personal right of privacy in the

places searched or the evidence seized.  *Rakas v. Illinois*, 439 U.S. 128 (1978); *Brown v. United States*, 411 U.S. 223 (1973); *Wong Sun v. United States*, 371 U.S. 471, 491–492 (1963). *Cf. United States v. Payner*, 447 U.S. 727 (1980).  Thus, the source of the evidence has no bearing on its usefulness in determining probable cause, Plaintiffs' allegation to the contrary notwithstanding.  *Iqbal*, 556 U.S. at 679 (holding a Court need not presume the truth of legal conclusions found in a complaint).  Plaintiffs claim that Mr. Boatwright rather than Mr. Crossland possessed the jacket.  *See* Compl. ¶ 45.  Thus, because Plaintiffs have no privacy interest in Mr. Boatwright's property, they can have no objection to its use against them.[2]

Plaintiffs next allege that the affidavit omits material information about the success rates of MPD warrants of this type.  Compl. ¶¶ 39-42.  Plaintiff's alleged omissions are irrelevant.  In evaluating Plaintiffs' allegation of material omission, "logic dictates that the affidavit be read as if the allegedly relevant material were included to determine whether probable cause would have been undetermined."  *Ogden v. Dist. of Columbia*, 676 F. Supp. at 327.  Plaintiffs allege that search warrants based on training and experience often find no evidence.  Compl. ¶ 41, 42.  However, the Supreme Court has held success and failure rates have limited usefulness.  *See Harris*, 133 S.Ct. at 1056-

---

[2]      Plaintiffs may contend that because the jacket did not belong to them, probable cause to search their home does not follow from finding the jacket.  This argument is unavailing because officers are not required to sort out every possible explanation at the time of determining probable cause.  *United States v. Traylor*, 2009 WL 87470 at *3 (W.D.N.Y. January 12, 2009).  The test for probable cause only requires a reasonable belief that criminal activity was afoot at 2400 3rd Street and that evidence of that activity could be found on the property.  *See id.*

57 ("Making matters worse, the decision below treats records of a dog's field performance as the gold standard in evidence, when in most cases they have relatively limited import."). Plaintiffs' emphasis on the gold standard of statistical evidence overlooks the obvious fact supporting probable cause here: the officers found a gun on the property. Compl. n.2 (alleging the steps where the jacket containing the gun was found were on Plaintiffs' property); *see also United States v. Quilling*, 261 F.3d 707, 712 (7th Cir. 2001) ("constructive possession can be established by showing that the contraband was seized at the defendant's residence").

Finally, Plaintiffs allege that Mr. Boatwright did not reside at 2400 3rd Street. *See* Compl. ¶ 42. This statement does not detract from finding probable cause. The officers found a gun (at the time, an illegal item), which Mr. Boatwright admitted he had not legally purchased or obtained, on the property of 2400 3rd Street. By the very low standard of probable cause, the officers reasonably concluded that other evidence related to the gun may be located on the property.

Plaintiffs further challenge whether the officers had probable cause to arrest Mr. Crossland. Compl. ¶ 98. Mr. Crossland flatly stated that he owned the jacket containing a stolen pistol. Compl. ¶ 21. Mr. Crossland later recanted this claim. Compl. ¶ 26. The officers had probable to arrest Mr. Crossland because he claimed to own a jacket that contained a gun. Mr. Boatwright's confession does not foreclose a

finding of probable cause to arrest Mr. Crossland because Mr. Boatwright's confession came after all three men were arrested.  *See* Compl. ¶ 26.

### b.   The means of executing the search warrant were reasonable.

"The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all."  *Terry*, 392 U.S. at 28. The execution of the search here was reasonable.   Plaintiffs allege two unreasonable actions by the officers in executing the search: (1) not permitting Ms. Lane to return inside her home; and (2) performing a protective sweep of Ms. Lane's property.

### 1.   The officers reasonably refused to permit Ms. Lane to enter her home.

The officers reasonably detained Ms. Lane while awaiting a search warrant to arrive.  Officers are permitted to detain occupants of a dwelling that is subject to a search warrant, even absent particularized suspicion to the individual detained. *Michigan v. Summers*, 452 U.S. 692, 702-703 (1981).  Even assuming the officers lacked particularized suspicion that Ms. Lane had committed any crime, they were permitted to detain her during the search.  Thus, the officers reasonably refused to permit Ms. Lane to enter her home once the search was underway.

The officers reasonably prevented her from reentering her home before the search began.   The Supreme Court recently held that *Summers*' justifications for detention do not extend past the immediate vicinity of the premises but did not address time constraints on *Summers* detentions.  *Bailey v. United States*, 133 S.Ct. 1031, 1042

(2013). Unlike *Bailey*, Ms. Lane was not detained; rather, she was not permitted to return to her home. Compl. ¶ 67. Thus, the burden on Ms. Lane closely followed the first concern discussed in *Summers* – ensuring the efficacy of the search – because Ms. Lane was merely prevented from tampering with, concealing, or destroying any evidence that may have been in her home. *Cf. California v. Acevedo*, 500 U.S. 565, 575 ("Law enforcement officers may seize a container and hold it until they obtain a search warrant.").[3]

Moreover, to the extent that *Bailey* clarified or modified the scope of *Summers*, the officers did not violate any rights that were established by *Bailey*. This is because *Bailey* was decided on February 18, 2013, four months after the conduct alleged here. As a result, at the time of the conduct alleged here, *Summers* controlled, and the officers could not have known that their detention of Ms. Lane violated a right established by *Bailey*. *See, e.g., Butera*, 235 F.3d at 652 (holding, after examining the law at the time of the alleged police misconduct, that the specific right at issue was not clearly established in the D.C. Circuit).

### 2. The protective sweep was reasonable.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly

---

[3] *Acevedo*'s holding addressed this rule from *Chadwick* as it relates to containers found in automobiles and permitted officers to search containers inside of a vehicle if they had probable cause to search the vehicle. *Acevedo*, 500 U.S. at 579.

confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  A protective sweep is justified "if the searching officer possesse[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing . . . that the area swept harbored an individual posing a danger to the officer or others." *Id.* (internal citations and quotation marks omitted) (alteration in original) (ellipsis added).  In this case, the officers arrested three individuals for possession of a firearm.  Having found one gun on the scene, the officers reasonably believed – enough so to support a finding of probable cause to search – that there may be other guns on the property.  *See* Compl. Ex. 1.  The officers arrested the three individuals on the front porch of the home.  Compl. ¶ 51.  The officers then observed a fourth individual coming out of the house.  Compl. ¶ 52.  The officers, thus, had an articulable suspicion that there may be other individuals in the home who have access to weapons and pose a threat to the officers.  The officers, therefore, performed a protective sweep of the home.  Compl. ¶ 58.  Thus, the officers had a reasonable belief based on articulable facts permitting a protective sweep of the home, which according to the allegations of the complaint, lasted approximately ten minutes.  *Id*.

### c.  The warrant was not so lacking in indicia of probable cause as to render the officers' belief in its validity unreasonable.

"For an officer to lose the shield of immunity, a plaintiff must demonstrate that if the omitted material had been included, 'a reasonably well-trained officer . . . would

have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant.' " *Ogden*, 676 F. Supp. at 328 (quoting *Malley* 475 U.S. at 344-45) (alteration in original).  On the face of the Complaint, Plaintiffs have failed to make this showing.

Plaintiffs allege that the affidavit failed to include (1) information that the gun was a product of an illegal search and (2) information related to MPD department-wide statistics regarding the success rate of search warrants supported by training and experience.[4]  Compl. ¶¶ 42, 51.  As discussed above, information that the officers found the gun allegedly in derogation of Mr. Boatwright's right to be free from unreasonable searches and seizures is irrelevant to finding probable cause because Fourth Amendment rights are individual rights, and the gun was not found in derogation of Plaintiffs' rights.  Likewise, information related to the success rate of past MPD searches is not relevant because it does not reflect on Officer Wright's (the affiant's) training and experience, because it does not negate the possibility of success, and because finding a gun on a property creates probable cause for finding additional contraband on the property.  Thus, this additional information does not strip the warrant application of all

---

[4]     Plaintiffs also allege that the affidavit should have reached other conclusions based on the officer's training and experience.  Compl. ¶¶ 44.  That bullets are sold individually and illegally on the street does not discredit Officer Wright's conclusion that bullets are regularly sold in packs of 50 or more rounds.

"indicia of probable cause" nor does it "render official belief in" a finding of probable cause "unreasonable."[5]  *See Malley*, 475 U.S. at 344-45.

Therefore, the Court should dismiss the Complaint with prejudice because there was no underlying constitutional violation and the officers' reliance on the search warrant was objectively reasonable.

## II.     Because there is no underlying constitutional violation, Plaintiffs have not pleaded a *Monell* claim against the District.

Plaintiffs bring a *Monell* claim against the District in Counts Five and Eight of the Complaint.  Compl. ¶¶ 102, 109.[6]  A municipality's liability under § 1983 is limited.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").  A prima facie case of a *Monell* claim requires both (1) a "predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *See Baker v. Dist. Of Columbia*, 326 F.3d 1302, 1305 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*,

---

[5]     Plaintiffs assign bad faith to Officer Wright.  Compl. ¶ 45.  While the Court should presume this assertion to be true in evaluating the Defendants' Motion to Dismiss, Officer Wright's subjective belief is irrelevant.  *See, e.g., Bond v. United States*, 529 U.S. 334, 339 n.2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment.").

[6]     Count 4 states: "The obvious lack of probable cause and false and reckless statements and omissions were the result of a policy, pattern, and custom of such conduct by the MPD and the result of MPD's failure to properly train and supervise its officers."  Compl. Count 4 Caption (formatting omitted).  Defendants' treat this as a *Monell* claim against the District.

*Tex.*, 503 U.S. 115, 120 (1992)); *accord Brown v. Dist. of Columbia*, 514 F.3d 1279, 1283 (D.C.

Cir. 2008); *Konah v. Dist. of Columbia*, 971 F. Supp. 2d 74, 81 (D.D.C. 2013).

Because Plaintiffs' claims against the individual officers fail, Plaintiffs have failed

to demonstrate the requisite "predicate constitutional violation" for *Monell* liability in

this case.  Thus, the Court should dismiss Count Four with prejudice.

<u>Conclusion</u>

For the reasons stated above, the Court should dismiss the Complaint with

prejudice.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

/s/ *Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057

/s/ *Aaron J. Finkhousen*
AARON J FINKHOUSEN [1010044]
441 4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-6511 (direct)

aaron.finkhousen@dc.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| ELLA LANE, *et al*., | ) |
|  | ) |
|  | )   Civil Action No.: 1:14-cv-01316 (RBW) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DISTRICT OF COLUMBIA, *et al*. | ) |
|  | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

---

## ORDER DISMISSING THE COMPLAINT

Upon consideration of the Defendants' Motion to Dismiss, any response thereto,

and the entire record, it is by the Court this _____ day of _____,

2014, **ORDERED** that the Defendant's Motion to Dismiss is **GRANTED**; and it is

further **ORDERED** that the complaint is dismissed with prejudice.

_____
REGGIE B. WALTON
DISTRICT COURT JUDGE